1

2

3

4

5

6                                UNITED STATES DISTRICT COURT

7                                      DISTRICT OF NEVADA

8                                              * * *

9

10   MARLON D. COLLINS,
                                                      Case No. 2:10-cv-01967-MMD-PAL
11                              Plaintiff,
                                                                    ORDER
12        v.

13   BRIAN E. WILLIAMS, SR., et al.,                  (Plaintiff's Motion for Leave to File
                                                      Declaration – dkt. no. 18; Plaintiff's Motion
14                              Defendants.           for Reconsideration – dkt. no. 20; Plaintiff's
                                                      Motion for Summary Judgment – dkt. no.
15                                                    30; Defendants' Motion for Summary
                                                      Judgment  - dkt. no. 37; Plaintiff's Motion to
16                                                    Extend Time – dkt. no. 42; Defendants'
                                                      Motion to Extend Time – dkt. no. 43)

17

18        Before the Court are a multitude of motions: Plaintiff Marlon D. Collin's **Motion for**

19   **Leave to File Declaration** (Dkt. 18, filed Nov. 14, 2011), Plaintiff's **Motion for**

20   **Reconsideration** (Dkt. #20, filed Nov. 28),  Plaintiff's **Motion for Summary Judgment**

21   (Dkt. #30, filed Jan. 26, 2012), Defendants Cheryl Burson, Tanya Hill, Jerry Howell,

22   Vincent Rabourn, and Brian E. Williams' **Motion for Summary Judgment** (Dkt. #37,

23   filed Apr. 11), Plaintiff's **Motion to Extend Time** (Dkt. #42, filed May 7), and Defendants'

24   **Motion to Extend Time** (Dkt. #43, filed May 8).  The Court has also considered the

25   relevant Oppositions and Replies to these motions.

26                                         **BACKGROUND**

27        Plaintiff is currently in the custody of the Nevada Department of Corrections

28   ("NDOC") and is incarcerated at Stewart Conservation Camp in Carson City, Nevada.

1   Plaintiff alleges that while he was housed at Southern Desert Correctional Center
2   ("SDCC") he filed a grievance on July 31, 2010, claiming that his cellmate was not taking
3   his anti-psychotic medication.  Plaintiff was then placed in administrative segregation
4   because one of the prison guards believed the wording of the grievance was a threat
5   against Plaintiff's cellmate.  On August 11, Sgt. Mustafaa, a disciplinary hearing officer,
6   dismissed this "threat" charge after Plaintiff explained his wording to his satisfaction.

7         After this charge was dismissed, the Full Warden's Classification Committee
8   ("FWCC") (the Defendants in this case) decided to return Plaintiff to the general
9   population of the prison.  Plaintiff, however, believed that filing this grievance exposed
10  him to danger and retaliation from his prior cellmate, who had allegedly been selling his
11  anti-psychotic drugs to other inmates.  Plaintiff, therefore, requested a transfer to another
12  NDOC institution.   On September 3, when the FWCC informed Plaintiff that they
13  intended to return him to general population after he signed a release from liability
14  waiver form, Plaintiff refused to sign.   Defendants then issued Plaintiff a "NOC" (the
15  Court believes this to be a Notice of Charge, a type of disciplinary charge) and placed
16  Plaintiff in protective segregation.  Sgt. Mustafaa later dismissed this disciplinary charge
17  at a disciplinary hearing on October 3.

18        Subsequent to the dismissal of this second disciplinary charge, Plaintiff was kept
19  in protective segregation for approximately four months.  Plaintiff's request for transfer
20  was denied even though other inmates were repeatedly transferred within NDOC.
21  Defendants claim that they did not know the particular safety issue until Plaintiff informed
22  them of his prior cellmate's name in December.  (The Court notes that it is unlikely the
23  prison was unaware of whom Plaintiff's cellmate had been or that this was the person to
24  whom Plaintiff referred.)  Plaintiff claims that this second charge for refusing to report to
25  his assigned location and protective segregation were in retaliation for his First
26  Amendment protected act of not signing the release from liability waiver.

27        Now before the Court are two motions for summary judgment on this claim and
28  sundry other motions.  For the reasons discussed below, the Court grants Plaintiff's and

1   Defendants' motions to extend time, denies Plaintiff's motion for leave to file declaration,

2   denies Plaintiff's motion to reconsider, denies Plaintiff's motion for summary judgment,

3   and grant Defendants' motion for summary judgment.   The Court also denies the

4   remaining motions referred to Magistrate Judge Leen as moot since the grant of

5   summary judgment in Defendants' favor terminates this case.

6                                          **DISCUSSION**

7        **I.        Motion for Leave to File**

8        In this motion, Plaintiff requests that the Court allow him to supplement the record

9   with a declaration explaining the facts of this case and presenting evidence.  This motion

10  is unnecessary.  A declaration such as Plaintiff's is not apropos for mere filing in the

11  docket.  Such a declaration is appropriate as part of a motion for summary judgment, in

12  opposition to a motion for summary judgment, or attached or in reference to some other

13  filing.  Thus, the Court denies the motion while explaining to Plaintiff that the Court has

14  examined his declarations and exhibits attached to other motions and responses and

15  that those are part of the record in this case.

16       **II.       Motion for District Judge to Reconsider**

17       Although not mentioned in the Federal Rules of Civil Procedure, motions for

18  reconsideration may be brought under Rules 59(e) and 60(b).  Rule 59(e) provides that

19  any motion to alter or amend a judgment shall be filed no later than 28 days after entry

20  of the judgment.  The Ninth Circuit has held that a Rule 59(e) motion for reconsideration

21  should not be granted "absent highly unusual circumstances, unless the district court is

22  presented with newly discovered evidence, committed clear error, or if there is an

23  intervening change in the controlling law."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*

24  *GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange Street Partners v.*

25  *Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

26       Under Rule 60(b), a court may relieve a party from a final judgment, order or

27  proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or

28  excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5)

1   the judgment has been satisfied; or (6) any other reason justifying relief from the

2   judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000). *See also De Saracho*

3   *v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (noting that the district

4   court's denial of a Rule 60(b) motion is reviewed for an abuse of discretion).

5          Plaintiff does not reveal under which Rule he brings the motion, but the motion

6   has merit under neither.  Plaintiff continues to merely argue that attempting to release

7   him into the general population at the prison (which the officials did not do as Plaintiff

8   refused to sign a liability waiver), and keeping him in administrative segregation for an

9   indeterminate amount of time (because of the dangers Plaintiff claimed awaited him in

10  general population) were Eighth Amendment violations.  As explained in the Court's

11  Order (Dkt. #19), they were not. Further, even assuming they were violations, qualified

12  immunity would protect these officials as stated in the Court's prior Order (*id*).

13          **III.    Motions for Summary Judgment**

14          The Court first notes that it grants both Plaintiff's and Defendants' motions to

15  extend time.  The Court accepts Defendants' reasons for why they filed their response

16  late.  The Court also accepts Plaintiff's reasons for needing to file late.

17          **A. Standard**

18          The purpose of summary judgment is to avoid unnecessary trials when there is no

19  dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

20  F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when the pleadings,

21  the discovery and disclosure materials on file, and any affidavits "show there is no

22  genuine issue as to any material fact and that the movant is entitled to judgment as a

23  matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

24  if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

25  the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

26  under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

27  Where reasonable minds could differ on the material facts at issue, however, summary

28  judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

4

1   1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise

2   a genuine issue of material fact is enough 'to require a jury or judge to resolve the

3   parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

4   902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

5   (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

6   inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.*

7   *Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

8          The moving party bears the burden of showing that there are no genuine issues

9   of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

10  order to carry its burden of production, the moving party must either produce evidence

11  negating an essential element of the nonmoving party's claim or defense or show that

12  the nonmoving party does not have enough evidence of an essential element to carry its

13  ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

14  F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's

15  requirements, the burden shifts to the party resisting the motion to "set forth specific

16  facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The

17  nonmoving party "may not rely on denials in the pleadings but must produce specific

18  evidence, through affidavits or admissible discovery material, to show that the dispute

19  exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

20  more than simply show that there is some metaphysical doubt as to the material facts."

21  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

22  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

23  insufficient." *Anderson*, 477 U.S. at 252.

24                **B.  Analysis of Plaintiff's Motion for Summary Judgment**

25                      **1.  Local Rule Requirements**

26         Plaintiff's motion for summary judgment fails for multiple reasons.  Principle

27  among the reasons is that Plaintiff failed to provide a statement of undisputed facts as

28  required by Local Rule 56-1.  Rather, Plaintiff discussed the procedural history of this

1    case and some of the alleged misdeeds of Defendants during this litigation, such as

2    misconstruing his complaint in arguing their motion to dismiss and claiming that the

3    never received his declaration.  None of Plaintiff's fact section actually lays out the facts

4    supporting his remaining claim.  Plaintiff's declaration attached to the motion, which the

5    Court has examined, does not substitute for this procedural requirement.

6                          **2.  Merits of Plaintiff's Claim**

7            The Court need not address the merits of Plaintiff's claims for the reasons the

8    Court addresses below in Section III.C.  Nonetheless, the Court will quickly address the

9    merits of Plaintiffs' claim here.

10           Plaintiff has presented no evidence or reasoning showing that his continued

11   confinement in protective segregation did not advance "legitimate penological goals," a

12   necessary element of his claim.  *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) ("A

13   prisoner suing prison officials under section 1983 for retaliation must allege that he was

14   retaliated against for exercising his constitutional rights and that the retaliatory action

15   does not advance legitimate penological goals, such as preserving institutional order and

16   discipline.").  While maybe the prison should have transferred Plaintiff to a different

17   prison as he requested (and as the prison eventually did, though only after a seemingly

18   long four months of protective segregation), prisoners do not have a right to determine

19   where they are housed or how they are classified.  *Neal v. Shimoda*, 131 F.3d 818, 828

20   (9th Cir. 1997).

21           Moreover, there is no evidence that Plaintiff's continued confinement was

22   retaliatory.   Here, after the first prison matter was settled in Plaintiff's favor at a

23   disciplinary hearing, Defendants determined to return him to the general population, but

24   required that he sign a release of liability form.  Plaintiff refused to sign the form because

25   he was afraid to be returned to the general population for fear of retaliation by his

26   cellmate.   Defendants allegedly punished him by issuing a NOC and kept him in

27   protective segregation.  The only part of their reaction that could be retaliatory was the

28   issuance of the NOC and placement of Plaintiff in protective segregation.  However,

6

1   Plaintiff, in effect, got what he wanted – not to reenter the general population of the

2   prison.  While Plaintiff wanted to achieve that result by way of a transfer, merely not

3   giving him the transfer he desired was not retaliatory because he had no right to a

4   transfer and segregation supported the legitimate penological goal of keeping him safe.

5   *Neal*, 131 F.3d at 828.

6   ## C. Analysis of Defendants' Motion for Summary Judgment

7   Defendants argue that they are entitled to summary judgment in their favor for

8   three principle reasons: 1) Plaintiff failed to exhaust administrative remedies as required

9   by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997e, *et seq*; 2) the

10   retaliation claim is insufficient; and 3) Defendants are entitled to qualified immunity.  As

11   the Court finds that both arguments (1) and (3) have merit, the Court will not address the

12   merits of Plaintiff's claim beyond the discussion above.

13   ### 1. Exhaustion

14   A prisoner's failure to exhaust administrative remedies is a proper basis for

15   terminating a civil rights action under the PLRA.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119

16   (9th Cir. 2003).  The PLRA requires inmates to first exhaust the administrative remedies

17   available to them before filing an action in court.  42 U.S.C. § 1997e(a) ("No action shall

18   be brought with respect to prison conditions under section 1979 of the Revised Statutes

19   of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined

20   in any jail, prison, or other correctional facility until such administrative remedies as are

21   available are exhausted.")

22   The PLRA makes exhaustion mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524

23   (2002).  The grievance process that a prison has put in place determines whether an

24   inmate has complied with the exhaustion requirement.  *See Jones v. Bock*, 549 U.S.

25   199, 218 (2007); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir. 2009).

26   NDOC Administrative Regulation ("AR") 740 prescribes the following exhaustion

27   requirements for inmates: (1) that the inmate file an informal grievance within six months

28   of the date of the damage, injury, or loss; (2) that the inmate appeal an unfavorable

7

1    response by filing a "first-level grievance" within five days of receiving the response; and

2    (3) that the inmate appeal an unfavorable first-level response by filing a "second-level

3    grievance" within five days of receiving the first-level response.  (Dkt. #37, Mot. Ex. C-1.

4    AR 740.)   An improperly filed informal grievance is insufficient to progress through the

5    exhaustion steps.  (*Id*. at Ex. C-1, AR 740.05 ¶ 8.)

6         Here, Plaintiff failed to exhaust his administrative remedies because he did not

7    abide the administrative process and regulations.  Plaintiff filed an informal grievance

8    which the grievance coordinator rejected for lacking clarity.  Specifically, the grievance

9    coordinator stated "You have not made it clear what your issue is.  Is this a disciplinary

10   appeal or just a statement?"  (*Id*. C-3, Informal Grievance and Response.)  The response

11   also stated: "You may re-submit your grievance after correcting the above deficiencies.

12   Failure to re-submit the grievance through the prescribe timeframe shall constitute

13   abandonment."  (*Id*.)  Rather than resubmit and go through the proper process, Plaintiff

14   submitted a first-level grievance and a second-level grievance, each of which was "Not

15   Accepted" on the basis of Plaintiff not having filed an accepted informal grievance.  (*Id*.

16   Ex. C-4, First-Level Grievance and Response; C-5, Second-Level Grievance and

17   Response.)   This inhibited the prison from actually addressing Plaintiff's underlying

18   complaint.  Without having properly grieved these issues, the PLRA prevents Plaintiff

19   from bringing his claims and the Court from addressing them.  Thus, the Court grants

20   summary judgment for Defendants as Plaintiff never filed an accepted informal grievance

21   and could not progress through the steps to exhaust his administrative remedies.

22                          **2.  Qualified Immunity**

23        Defendants are also entitled to qualified immunity on Plaintiff's remaining

24   retaliation claim.  The doctrine of qualified immunity protects government officials from

25   liability for civil damages to the extent their conduct does not violate clearly established

26   statutory or constitutional rights of which a reasonable person would have known at the

27   time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "The protection of

28   qualified immunity applies regardless of whether the government official's error is a

1   mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

2   fact."  *Id.* (internal quotation omitted).   The determination of whether an official is

3   protected by qualified immunity should take place "'at the earliest possible stage in

4   litigation.'"  *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  Courts considering

5   whether an official is shielded by qualified immunity consider two questions: first,

6   whether the facts alleged show the officer's conduct violated a constitutional right, and

7   second, whether the right was clearly established.  *Id.* at 232.

8          Here, Plaintiff claims that he was retaliated against in two ways for refusing to

9   sign the liability waiver.  First, he was given new disciplinary charges, the "NOC", for

10  failing to accept his housing assignment (even though no actual housing assignment

11  was made since he refused to sign the waiver).  Second, he was put in protective

12  custody rather than being transferred to a different institution as he wished.   The

13  issuance of the NOC and denial of transfer were not retaliatory in nature as discussed

14  above.   However, even if such conduct was arguably retaliatory, it was not clearly

15  established at the time of the incident (or now) that refusing to sign the waiver was a

16  First Amendment protected act of speech.[1]   Thus, qualified immunity protects these

17  officials from suit for either issuing the NOC or keeping Plaintiff in protective segregation.

18  Accordingly, the Court also grants summary judgment on Plaintiff's only remaining claim

19  on qualified immunity grounds.

20                                    **CONCLUSION**

21          Accordingly, and for good cause appearing,

22          IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Declaration

23  (#18) is DENIED.

24          IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Reconsideration

25  (#20) is DENIED.

26

27  _____

28  [1] Plaintiff has presented no case law showing that the refusal to sign a liability waiver is a protected act of free speech and the Court has not found any such case law in its own search.  Thus, even if such case law does exist, it is far from clearly established that refusal to sign a liability waiver in the prison setting is an act of protected speech.

1    IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Summary
2  Judgment (#30) is DENIED.

3    IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary
4  Judgment (#37) is GRANTED.

5    IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Extend Time (#42)
6  is GRANTED.

7    IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Extend Time
8  (#43) is GRANTED.

9    The Clerk of the Court is directed to close this case.

10    ENTERED THIS 8th day of August, 2012.

12    _____
      UNITED STATES DISTRICT JUDGE