UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARLON D. COLLINS,<br><br>               Plaintiff,<br><br>v.<br><br>BRIAN E. WILLIAMS, SR., et al.,<br><br>               Defendants. | Case No. 2:10-cv-01967-MMD-PAL<br><br>ORDER<br><br>(Plaintiff's Motion for Leave to File Declaration – dkt. no. 18; Plaintiff's Motion for Reconsideration – dkt. no. 20; Plaintiff's Motion for Summary Judgment – dkt. no. 30; Defendants' Motion for Summary Judgment  - dkt. no. 37; Plaintiff's Motion to Extend Time – dkt. no. 42; Defendants' Motion to Extend Time – dkt. no. 43) |

Before the Court are a multitude of motions: Plaintiff Marlon D. Collin's **Motion for Leave to File Declaration** (Dkt. 18, filed Nov. 14, 2011), Plaintiff's **Motion for Reconsideration** (Dkt. #20, filed Nov. 28),  Plaintiff's **Motion for Summary Judgment** (Dkt. #30, filed Jan. 26, 2012), Defendants Cheryl Burson, Tanya Hill, Jerry Howell, Vincent Rabourn, and Brian E. Williams' **Motion for Summary Judgment** (Dkt. #37, filed Apr. 11), Plaintiff's **Motion to Extend Time** (Dkt. #42, filed May 7), and Defendants' **Motion to Extend Time** (Dkt. #43, filed May 8).  The Court has also considered the relevant Oppositions and Replies to these motions.

**BACKGROUND**

Plaintiff is currently in the custody of the Nevada Department of Corrections ("NDOC") and is incarcerated at Stewart Conservation Camp in Carson City, Nevada.

Plaintiff alleges that while he was housed at Southern Desert Correctional Center ("SDCC") he filed a grievance on July 31, 2010, claiming that his cellmate was not taking his anti-psychotic medication. Plaintiff was then placed in administrative segregation because one of the prison guards believed the wording of the grievance was a threat against Plaintiff's cellmate. On August 11, Sgt. Mustafaa, a disciplinary hearing officer, dismissed this "threat" charge after Plaintiff explained his wording to his satisfaction.

After this charge was dismissed, the Full Warden's Classification Committee ("FWCC") (the Defendants in this case) decided to return Plaintiff to the general population of the prison. Plaintiff, however, believed that filing this grievance exposed him to danger and retaliation from his prior cellmate, who had allegedly been selling his anti-psychotic drugs to other inmates. Plaintiff, therefore, requested a transfer to another NDOC institution. On September 3, when the FWCC informed Plaintiff that they intended to return him to general population after he signed a release from liability waiver form, Plaintiff refused to sign. Defendants then issued Plaintiff a "NOC" (the Court believes this to be a Notice of Charge, a type of disciplinary charge) and placed Plaintiff in protective segregation. Sgt. Mustafaa later dismissed this disciplinary charge at a disciplinary hearing on October 3.

Subsequent to the dismissal of this second disciplinary charge, Plaintiff was kept in protective segregation for approximately four months. Plaintiff's request for transfer was denied even though other inmates were repeatedly transferred within NDOC. Defendants claim that they did not know the particular safety issue until Plaintiff informed them of his prior cellmate's name in December. (The Court notes that it is unlikely the prison was unaware of whom Plaintiff's cellmate had been or that this was the person to whom Plaintiff referred.) Plaintiff claims that this second charge for refusing to report to his assigned location and protective segregation were in retaliation for his First Amendment protected act of not signing the release from liability waiver.

Now before the Court are two motions for summary judgment on this claim and sundry other motions. For the reasons discussed below, the Court grants Plaintiff's and

Defendants' motions to extend time, denies Plaintiff's motion for leave to file declaration, denies Plaintiff's motion to reconsider, denies Plaintiff's motion for summary judgment, and grant Defendants' motion for summary judgment. The Court also denies the remaining motions referred to Magistrate Judge Leen as moot since the grant of summary judgment in Defendants' favor terminates this case.

**DISCUSSION**

**I.     Motion for Leave to File**

In this motion, Plaintiff requests that the Court allow him to supplement the record with a declaration explaining the facts of this case and presenting evidence. This motion is unnecessary. A declaration such as Plaintiff's is not apropos for mere filing in the docket. Such a declaration is appropriate as part of a motion for summary judgment, in opposition to a motion for summary judgment, or attached or in reference to some other filing. Thus, the Court denies the motion while explaining to Plaintiff that the Court has examined his declarations and exhibits attached to other motions and responses and that those are part of the record in this case.

**II.    Motion for District Judge to Reconsider**

Although not mentioned in the Federal Rules of Civil Procedure, motions for reconsideration may be brought under Rules 59(e) and 60(b). Rule 59(e) provides that any motion to alter or amend a judgment shall be filed no later than 28 days after entry of the judgment. The Ninth Circuit has held that a Rule 59(e) motion for reconsideration should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5)

the judgment has been satisfied; or (6) any other reason justifying relief from the judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000). *See also De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (noting that the district court's denial of a Rule 60(b) motion is reviewed for an abuse of discretion).

Plaintiff does not reveal under which Rule he brings the motion, but the motion has merit under neither. Plaintiff continues to merely argue that attempting to release him into the general population at the prison (which the officials did not do as Plaintiff refused to sign a liability waiver), and keeping him in administrative segregation for an indeterminate amount of time (because of the dangers Plaintiff claimed awaited him in general population) were Eighth Amendment violations. As explained in the Court's Order (Dkt. #19), they were not. Further, even assuming they were violations, qualified immunity would protect these officials as stated in the Court's prior Order (*id*).

### III. Motions for Summary Judgment

The Court first notes that it grants both Plaintiff's and Defendants' motions to extend time. The Court accepts Defendants' reasons for why they filed their response late. The Court also accepts Plaintiff's reasons for needing to file late.

#### A. Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**B. Analysis of Plaintiff's Motion for Summary Judgment**

**1. Local Rule Requirements**

Plaintiff's motion for summary judgment fails for multiple reasons. Principle among the reasons is that Plaintiff failed to provide a statement of undisputed facts as required by Local Rule 56-1. Rather, Plaintiff discussed the procedural history of this

case and some of the alleged misdeeds of Defendants during this litigation, such as misconstruing his complaint in arguing their motion to dismiss and claiming that the never received his declaration. None of Plaintiff's fact section actually lays out the facts supporting his remaining claim. Plaintiff's declaration attached to the motion, which the Court has examined, does not substitute for this procedural requirement.

### 2. Merits of Plaintiff's Claim

The Court need not address the merits of Plaintiff's claims for the reasons the Court addresses below in Section III.C. Nonetheless, the Court will quickly address the merits of Plaintiffs' claim here.

Plaintiff has presented no evidence or reasoning showing that his continued confinement in protective segregation did not advance "legitimate penological goals," a necessary element of his claim. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) ("A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."). While maybe the prison should have transferred Plaintiff to a different prison as he requested (and as the prison eventually did, though only after a seemingly long four months of protective segregation), prisoners do not have a right to determine where they are housed or how they are classified. *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997).

Moreover, there is no evidence that Plaintiff's continued confinement was retaliatory. Here, after the first prison matter was settled in Plaintiff's favor at a disciplinary hearing, Defendants determined to return him to the general population, but required that he sign a release of liability form. Plaintiff refused to sign the form because he was afraid to be returned to the general population for fear of retaliation by his cellmate. Defendants allegedly punished him by issuing a NOC and kept him in protective segregation. The only part of their reaction that could be retaliatory was the issuance of the NOC and placement of Plaintiff in protective segregation. However,

1  Plaintiff, in effect, got what he wanted – not to reenter the general population of the
2  prison.  While Plaintiff wanted to achieve that result by way of a transfer, merely not
3  giving him the transfer he desired was not retaliatory because he had no right to a
4  transfer and segregation supported the legitimate penological goal of keeping him safe.
5  *Neal*, 131 F.3d at 828.

### C. Analysis of Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment in their favor for three principle reasons: 1) Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997e, *et seq*; 2) the retaliation claim is insufficient; and 3) Defendants are entitled to qualified immunity.  As the Court finds that both arguments (1) and (3) have merit, the Court will not address the merits of Plaintiff's claim beyond the discussion above.

### 1. Exhaustion

A prisoner's failure to exhaust administrative remedies is a proper basis for terminating a civil rights action under the PLRA.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  The PLRA requires inmates to first exhaust the administrative remedies available to them before filing an action in court.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")

The PLRA makes exhaustion mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The grievance process that a prison has put in place determines whether an inmate has complied with the exhaustion requirement.  *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir. 2009). NDOC Administrative Regulation ("AR") 740 prescribes the following exhaustion requirements for inmates: (1) that the inmate file an informal grievance within six months of the date of the damage, injury, or loss; (2) that the inmate appeal an unfavorable

1  response by filing a "first-level grievance" within five days of receiving the response; and
2  (3) that the inmate appeal an unfavorable first-level response by filing a "second-level
3  grievance" within five days of receiving the first-level response. (Dkt. #37, Mot. Ex. C-1.
4  AR 740.)   An improperly filed informal grievance is insufficient to progress through the
5  exhaustion steps. (*Id*. at Ex. C-1, AR 740.05 ¶ 8.)

6  Here, Plaintiff failed to exhaust his administrative remedies because he did not
7  abide the administrative process and regulations. Plaintiff filed an informal grievance
8  which the grievance coordinator rejected for lacking clarity. Specifically, the grievance
9  coordinator stated "You have not made it clear what your issue is. Is this a disciplinary
10 appeal or just a statement?" (*Id*. C-3, Informal Grievance and Response.) The response
11 also stated: "You may re-submit your grievance after correcting the above deficiencies.
12 Failure to re-submit the grievance through the prescribe timeframe shall constitute
13 abandonment." (*Id*.) Rather than resubmit and go through the proper process, Plaintiff
14 submitted a first-level grievance and a second-level grievance, each of which was "Not
15 Accepted" on the basis of Plaintiff not having filed an accepted informal grievance. (*Id*.
16 Ex. C-4, First-Level Grievance and Response; C-5, Second-Level Grievance and
17 Response.) This inhibited the prison from actually addressing Plaintiff's underlying
18 complaint. Without having properly grieved these issues, the PLRA prevents Plaintiff
19 from bringing his claims and the Court from addressing them. Thus, the Court grants
20 summary judgment for Defendants as Plaintiff never filed an accepted informal grievance
21 and could not progress through the steps to exhaust his administrative remedies.

22 **2.  Qualified Immunity**

23 Defendants are also entitled to qualified immunity on Plaintiff's remaining
24 retaliation claim. The doctrine of qualified immunity protects government officials from
25 liability for civil damages to the extent their conduct does not violate clearly established
26 statutory or constitutional rights of which a reasonable person would have known at the
27 time of the conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The protection of
28 qualified immunity applies regardless of whether the government official's error is a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation omitted). The determination of whether an official is protected by qualified immunity should take place "'at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Courts considering whether an official is shielded by qualified immunity consider two questions: first, whether the facts alleged show the officer's conduct violated a constitutional right, and second, whether the right was clearly established. *Id*. at 232.

Here, Plaintiff claims that he was retaliated against in two ways for refusing to sign the liability waiver. First, he was given new disciplinary charges, the "NOC", for failing to accept his housing assignment (even though no actual housing assignment was made since he refused to sign the waiver). Second, he was put in protective custody rather than being transferred to a different institution as he wished. The issuance of the NOC and denial of transfer were not retaliatory in nature as discussed above. However, even if such conduct was arguably retaliatory, it was not clearly established at the time of the incident (or now) that refusing to sign the waiver was a First Amendment protected act of speech.[1] Thus, qualified immunity protects these officials from suit for either issuing the NOC or keeping Plaintiff in protective segregation. Accordingly, the Court also grants summary judgment on Plaintiff's only remaining claim on qualified immunity grounds.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File Declaration (#18) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Reconsideration (#20) is DENIED.

---

[1] Plaintiff has presented no case law showing that the refusal to sign a liability waiver is a protected act of free speech and the Court has not found any such case law in its own search. Thus, even if such case law does exist, it is far from clearly established that refusal to sign a liability waiver in the prison setting is an act of protected speech.

9

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#30) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment (#37) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Extend Time (#42) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Extend Time (#43) is GRANTED.

The Clerk of the Court is directed to close this case.

ENTERED THIS 8th day of August, 2012.

_____
UNITED STATES DISTRICT JUDGE